# APPENDIX.

## DISTRICT COURT PROCEEDINGS.

### THE LAW OF LIBEL.

CHARGE TO THE JURY BY SHANNON, JUDGE, IN THE DISTRICT COURT FOR YANKTON COUNTY.

THE TERRITORY OF DAKOTA, }
        v. }
MARIS TAYLOR AND JAMES TAYLOR. }

*Gentlemen of the Jury:*—

This is an indictment for an alleged libel. Our law declares that on the trial of such indictment, the jury have the right to determine the law and the fact.

First—What is the law of libel?

Every person has (subject to the restrictions and qualifications provided by law), the right of protection from bodily restraint or harm, from personal insult, and from defamation.

Defamation is effected by libel or slander. But apart from any civil action for mere pecuniary damages, the law declares libel to be a public offense, and to be prosecuted in the name of "the Territory of Dakota."

A public offense is an act or omission forbidden by law, and to which is annexed, upon conviction, a punishment prescribed in our Penal Code. The commission of a public offense affects, therefore, the peace and dignity of the entire community, to-wit: "of the Territory;" and so this indict-

ment concludes. Although it alleges the perpetration of a libel, and also that such libel is "to the great damage and scandal of John L. Pennington," yet by your verdict (if it should be against the defendants) you cannot award any "money damages" to that individual.

Our Penal Code defines the nature of the various public offenses, and classifies libel as one of them, and as an offense against the person and his good name, or reputation. Any malicious injury to good name, other than by words orally spoken, is a libel. To explain:—any malicious publication by printing, which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation, is a libel under our Penal Code. And "every person who willfully, and with a malicious intent to injure another, publishes any libel, is guilty of a misdemeanor."

What is the meaning of this word "willfully?"

The term "willfully," when applied to the intent, by which an act is done, implies simply a purpose or willingness to commit the act referred to.

What, in the next place, is the meaning of the other word "malicious," in the above definition?

The term "malicious," when employed (as it is above) to designate, or qualify, the intent with which an act is done, imports a wish to vex, annoy, or injure another person, established either by proof or presumption of law.

When is an injurious publication presumed to have been malicious?

Our Penal Code, section 312, declares that an injurious publication is presumed to have been malicious, if no justifiable motive for making it is shown.

But how does our Penal Code guard the rights of defendants?

The answer is, that by section 313, "in all criminal prosecutions or indictments for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted."

Again, does our Penal Code any further guard the rights of the accused persons?

Yes; and in the interest of the "newspaper press." For by section 316, that Code declares that "no reporter, editor, or proprietor of any newspaper, is liable to any prosecution for a fair and true report of any judicial, legislative, or other public official proceedings, or of any statement, speech, argument, or debate in the course of the same, except upon proof of malice in making such report, which shall in no case be implied from the mere fact of publication."

Is this privilege expressly extended to reporters, editors, and proprietors of newspapers—plain and clear—or is it not?

Transpose it and see. For a fair and true report of any judicial, legislative, or other public official proceedings, or of any statement, speech, argument, or debate in the course of the same, no reporter, editor, or proprietor of any newspaper, is liable to any prosecution. The non-liability for such fair and true report has one exception, to-wit: except upon proof of malice in making such report, etc.

By section 317, it is prescribed that libelous remarks or comments connected with matter privileged by the last section (to-wit, section 316,) "receive no privilege by reason of their being so connected."

But what if such report in a newspaper should be neither fair nor true? What if it should be false?

These things are for you to inquire into and determine.

All the authorities quoted agree, I believe, that malice on the part of a publisher of a paper, is conclusively presumed, or inferred, if the publications are false.

In this case you have, I repeat, the right to determine the law and the facts. In case of a reasonable doubt as to whether the guilt of the defendants is satisfactorily shown, they are entitled to be acquitted. But the doubt must be reasonable, and must not spring merely from a wish or desire to acquit irrespective of the law and the evidence.

P. C. SHANNON,

Judge.

---

After being out all night the jury came in and, being called, their foreman presented the following paper, to-wit:

COURT ROOM, December 23, 1877.

*To His Honor, Judge Shannon:*—

Will you please answer a few questions and oblige this jury, as we cannot agree:

1st.   Are we compelled by our oaths, as jurors, to return a verdict in favor of plaintiff, if the statements made in said publication are proven to be untrue, · notwithstanding the article states that they are so informed, and they feel it their duty to make public?

2d.   Can we return a verdict in favor of defendants if we believe these statements were untrue, and were made without malice or willfully intended to injure the parties mentioned in said publication, but for the public good?

3d.   Was it necessary for the defendants to prove that they were in possession of facts to sustain their charge ?

J. C. ENGLISH,
Foreman.

Accordingly on Monday, the 24th day of December, the Court gave the following written charge to the jury, being in compliance with section 384, of Code of Criminal Procedure, which makes it obligatory upon the Court to give the jury further instructions when requested so to do:

*Gentlemen of the Jury* :—

Your written requests for further instructions, have imposed an unsought duty on me, and have necessitated a further examination of the law of libel as it exists in this Territory.

According to our Code, the freedom of the press consists in publishing the truth with good motives and for justifiable ends; and in publishing all such fair and true reports as are embraced within section 316.

Formerly, in criminal prosecutions, the truth could not be pleaded in defense.   Hence arose the common maxim: " The greater the truth the greater the libel," which subjected the old laws on this subject to a great deal of ridicule and contempt.

Happily our law, following modern State constitutional provisions and examples, makes the truth a defense when published with the motives and for the ends already named.

Broadly viewed, proof of the truth of the charge alone is not sufficient in every case; for there may be cases where the matter published, because of its obscenity or blasphemy, is not fit to be spread before the public, whether true or false.

In my first charge, I quoted section 316 of our Penal Code, in reference to the privileges of reporters, editors, or proprietors of newspapers.   With this exception of non-liability for a fair and true report of such proceedings, etc., our Code

seems to hold this class of persons to the same rigid responsibility with all other persons who make injurious publications. And our Code, in this respect, appears to be in consonance with the legislation of (to say the least), two of the most enlightened and liberal States of the Union.

The Legislature of the State of New York, in the year 1854, enacted a statute from which ours is framed, as follows: " No reporter, editor, or proprietor of any newspaper, shall be liable to any action or prosecution, civil or criminal, for a fair and true report in such newspaper, of any judicial, legislative, or other public official proceedings; or of any statement, speech, argument or debate in the course of the same, except upon actual proof of malice in making such reports, which shall in no case be implied from the fact of publication. Section 2. Nothing in the preceding section contained shall be so construed as to protect any such reporter, editor or proprietor from an action or indictment for any libelous comments or remarks superadded to, and interspersed or connected with such report." (See our section 317.)

The Penal Code of California adopted as late as 1872, on the subject of libel, is almost *verbatim* the same as ours. (See Cal. Penal Code, § 249 to 257, inclusive.)

" It is no defense," (says Judge Cooley—Const. Lim., 455,) " that they "—injurious communications or libels " have been copied with or without comment from another paper; or that the source of the information was stated at the time of the publication; or that the publication was made in the paper without the knowledge of the proprietor, as an advertisement or otherwise; or that it consists in a criticism on the course and character of a candidate for public office."

A criticism is one thing, and a libel is another. A comment, or judgment, passed or expressed on acts done, or actual conduct, is far different from a false aspersion or a malicious defamation. Criticism upon public men or officers, their actions, character and motives, is not only recognized as legitimate, but large latitude and great freedom of expression permitted, so long as good faith inspires the publication, and malicious injury to reputation avoided. There are cases where it is clearly the duty of every one to speak freely what he may have to say concerning public officers, or those who may present themselves for public positions. Through the

ballot-box the electors approve or condemn those who ask their suffrages; and however emphatic the condemnation, and upon whatever grounds, no action will lie therefor. Some officers, however, are not chosen by the people directly, but designated through some other mode of appointment. But the public have a right to be heard (by the appointing power) on the question of their selections; and they have the right, for such reasons as seem to their minds sufficient, to ask for their dismissal afterwards. They have also the right to complain of official conduct affecting themselves, and to petition for a redress of grievances. A principal purpose in perpetuating and guarding the right of petition is to insure to the public a right to be heard in these and the like cases. To illustrate:—in a case in New York, a party was prosecuted for a libel contained in a *petition* signed by him and a number of other citizens of his county, and presented to the appointing power, praying for the removal of the plaintiff from the office of district attorney of the county, which office, the petition charged, he was prostituting to private purposes. The case involved the right of petition; and the highest court of that State held that the communication was privileged, and could not support an action for libel, unless the plaintiff could show that the petition was malicious and groundless, and presented for the purpose of injuring his character.

A similar ruling was made by the Supreme Court of Pennsylvania, where a party was prosecuted for charges against a justice of the peace, contained in a deposition made to be presented to the governor of that State, who had the appointing power.

This rule protecting the right of petition, is subject, however, to this qualification, that the petition or remonstrance must be addressed to the body or officer having the power of appointment or removal, or the authority to give the redress or grant the relief which is sought; or at least that the petitioner should really and in good faith believe he is addressing himself to an authority possessing power in the premises.

But is the case before you, gentlemen of the jury, one claiming to be a petition to the appointing power, for the removal of the governor of this territory, or for his discontinuance as such? Has it been at all pretended that it is such a case?

I have spoken of the difference between libel and that latitude of criticism upon acts done, which is allowable. In the well-known New York case of *Root v. King*, the Supreme Court held that the publication in a newspaper of a false libel, in relation to a candidate for public office (to-wit, a candidate for the office of lieutenant governor), though such publication was by a voter and the editor of the paper, in the course of a contested election, was not an exception to the general rule of liability for such false libel.

In my first charge to you, I stated that malice on the part of the publisher is conclusively presumed, or inferred, if the injurious publication is false. Our Code (section 312) declares that "injurious publication is presumed to have been malicious if no justifiable motive for making it is shown."

Now, what, under our Code, amounts to à justification? The answer is, that the accused may justify, by giving the truth in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted.

If the prosecution shows the falsity of the matter contained in the publication, malice is, *prima facie*, implied. The falsity, in other words, is *prima facie* evidence of malice; and proof of justification or excuse lies on the accused. In the New York case last quoted, it was held that malice will, in such case, be implied from the nature of the publication itself, or from its falsity; and the defendant is then bound to show its truth, in order to justify. And this is what was meant and intended in the first charge to you in regard to the presumption growing out of the falsity of an injurious publication.

If the prosecution proves the falsehood of the statements in a libelous article, and the accused offers no evidence whatever of any kind, it then becomes a conclusive presumption of malice both in fact and at law. You will remember that the defendants in this case, did not produce a solitary witness before you. All the evidence has been produced by the prosecution. The truth of the charges in the defendants' newspaper was not attempted to be shown.

So far as the matters at issue in this case are concerned, the only other justification in our Code is contained in section 316, already referred to. Editors and proprietors of newspapers are justifiable in publishing such fair and true reports of proceedings, statements, speeches, arguments and debates as are mentioned in that section. And in making such fair and true reports they are not liable to prosecution, except upon proof of malice as therein set forth. In such cases the prosecution must give actual proof of malice. And these explanations bring me to consider the main points addressed to me by you.

If the statements made in the publication set forth in this indictment are proved to be untrue, beyond a reasonable doubt, then it follows that it constitutes no defense, merely and of itself, to allege that " the article states that they," the defendants, " are so informed, and they feel it their duty to make public."

It is no excuse for a false libel—if you believe it to be such —to allege, either in the libel itself or otherwise, that the publishers were merely informed of its correctness, and that, therefore, they felt it to be a duty to give such false information to the public. There would be no legal redress for defamation of character, if such a false principle should prevail. For every slander and libel, the flimsy excuse would be, " why, I was told so, and I felt it to be my duty to spread it and to make it public." Informants would be plenty, and reputation would be worse than an empty bubble.

The object of a good government is to protect reputation, as well as life, and liberty, and property. With honorable members of society; character is as dear and valuable as any of the others. If you believe, beyond a reasonable doubt, that the article in question is not a fair and true report of public official proceedings, but unfair and untrue, and that the accusations contained in the article are false, it is for yourselves to say that there is an absence of that willfullness and malice essential to convicting persons for the publication of a libel.

The misdemeanor in this case consists in publishing a libel willfully and with a malicious intent to injure another. You must find each one of the elements of the offense, beyond a

reasonable doubt; that there is a libel, that it was published by the defendants, willfully and with such malicious intent to injure John L. Pennington.

I have defined for your instruction what is libel? what is the meaning of the words "willful" and "malicious?" I have repeated the words of our Code that "an injurious publication is *presumed* to have been malicious, if no justifiable motive for making it is shown." I have also given you such other explanations in regard to malice as my judgment dictates to be correct and just. It is now for you to find what justifiable motive these defendants have shown to you. Whatever evidence of that nature or of any kind for the defendants, you may find in the testimony of the prosecution, must go in favor of the accused. Examine it all. Weigh everything in evidence carefully.

It remains now for you, gentlemen of the jury, to take the responsibility. You have my two charges which you will consider together. In determining the law and the fact, each man of you is a sworn judge, and you must, in that capacity, divest yourselves of all prejudices and partialities, if any such you have; and you must dispassionately examine the publication which is the ground of this prosecution. You are not to be guided by ties of friendship, or by political prejudices. You must decide without fear, favor, or affection, as upright judges on your oaths as you will answer to God and your country. Consequences you should disregard, and you must firmly do your duty. Acquit, if the defendants are innocent; convict, if they are guilty.